1

**E-Filed 9/29/09**

2

3

4

5

6

7

8

9          IN THE UNITED STATES DISTRICT COURT

10         FOR THE NORTHERN DISTRICT OF CALIFORNIA

11              SAN JOSE DIVISION

12

13   ELISE STASSART,                    Case Number C 09-1131 JF (HRL)

                    Plaintiff,
14                                       ORDER[1] DENYING MOTIONS
                                         FOR PRELIMINARY INJUNCTION
15        v.                             AND GRANTING MOTIONS TO
                                         DISMISS AND STRIKE WITH
16                                       LEAVE TO AMEND
     LAKESIDE JOINT SCHOOL DISTRICT, et al.,
17                                       Re. docket nos. 27, 36, 38, 40, 46, 47
                    Defendants.
18

19

20

21        Plaintiff Elise Stassart ("Plaintiff"), who is proceeding *pro se*, alleges that Defendants

22   Lakeside School District ("Lakeside"), its Superintendent, Bob Chrisman ("Chrisman"),

23   California Department of Education ("CDE") Superintendent Jack O'Connell ("O'Connell"),

24   Office of Administrative Hearings Officer Laura Gutierrez ("Gutierrez"), Santa Clara County

25   Office of Education ("SCCOE") official Charles Weis ("Weis"), Campbell Union School District

26   ("CUSD") Superintendent Johanna VanderMolen ("VanderMolen"), and Los Gatos Union

27

28        [1] This disposition is not designated for publication in the official reports.

Case No. C 09-1131 JF (HRL)
ORDER DENYING MOTIONS  FOR PRELIMINARY INJUNCTION AND GRANTING MOTIONS TO DISMISS
AND STRIKE WITH LEAVE TO AMEND
(JFLC3)

1  School District ("LGUSD") Superintendent Richard Whitmore ("Whitmore") have violated and

2  continue to violate the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400

3  et seq., Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq., and §

4  504 of the Rehabilitation Act of 1973 , 29 U.S.C. § 794 ("Section 504"), by denying her adoptive

5  son I.S. a federally mandated "free and appropriate public education," and by retaliating against

6  her when she attempted to secure educational services for her son.

7      Plaintiff moves for a preliminary injunction requiring Defendant Lakeside to provide free

8  transportation to a charter school of Plaintiff's choosing.  Plaintiff also moves for a preliminary

9  injunction against Whitmore to allow I.S. to attend a middle school in LGUSD. Defendants move

10  to dismiss portions of Plaintiff's First Amended Complaint ("FAC") on the grounds of lack of

11  jurisdiction, statutory immunity, and failure to state valid claims, and to strike portions of the

12  complaint relating to damages and attorney's fees.

13      For the reasons discussed below, Plaintiff's motions for a preliminary injunction will be

14  denied.  Defendants' motions to dismiss and strike will be granted, with leave to amend.

15                                    **I. BACKGROUND**

16      Plaintiff and her husband Philippe Stassart reside in Santa Cruz County and are the legal

17  guardians of I.S., a minor.  I.S. has been diagnosed with several mental illnesses and has a long

18  history of learning disabilities of varying degrees of severity.  I.S was enrolled at Lakeside

19  Elementary School for his fourth and fifth grade years (the 2005-06 and 2006-07 school years),

20  and was transferred to Rolling Hills Middle School ("Rolling Hills") for his sixth grade year

21  (2007-08).  The transfer to Rolling Hills occurred pursuant to a memorandum of understanding

22  between Lakeside, which is Plaintiff's district of residence and does not operate a middle school,

23  and CUSD, which operates Rolling Hills.

24      In April 2007, before I.S. began attending Rolling Hills, Plaintiff requested that I.S. be

25  evaluated for an Individualized Educational Plan ("IEP") under the IDEA.  After evaluating I.S.

26  in May 2007, Lakeside found that, although I.S. had been diagnosed with an emotional

27  disturbance, "it did not adversely affect his educational performance, and classroom

28

2

1  accommodations were sufficient to allow [him] to receive an education." (FAC ¶ 55.)

2  Accordingly, Lakeside did not design an IEP for I.S. at that time.  Lakeside did conclude,

3  however, that I.S. met the criteria for developing a plan pursuant to Section 504 of the

4  Rehabilitation Act.  That plan provided for accommodations such as extra time and support with

5  transitions, designated adults to provide positive reinforcement and help in processing the

6  educational environment, and assistance with behavior regulation.

7       Plaintiff alleges that Rolling Hills did not adhere to the Section 504 plan and that both

8  Lakeside and CUSD committed various procedural violations under both the IDEA and Section

9  504.  Additionally, and more generally, Plaintiff alleges that Lakeside, as the agency responsible

10 for her son's educational placement, and VanderMolen, as superintendent of the school district

11 operating Rolling Hills, failed to provide her son with the educational accommodations and

12 services to which he is legally entitled.

13      Given the perceived inadequacy of Rolling Hills as a learning environment for I.S.,

14 Plaintiff attempted in the fall of 2007 to enroll I.S. at Fisher Middle School ("Fisher"), which is

15 operated by LGUSD.  Fisher is the closest middle school to Plaintiff's residence, and is the

16 middle school to which residents on Plaintiff's mountain road had enjoyed access for fifty years

17 prior to the school's redesignation as part of a "Basic-Aid" district in 2005.  However, Plaintiff's

18 transfer request was denied by the Whitmore.  Plaintiff appealed the denial to the Santa Clara

19 County Office of Education, but Weis affirmed Whitmore's decision.  Plaintiff alleges that both

20 decisions violated state and federal law.

21      In October 2007, Plaintiff attended a meeting with Rolling Hills staff to discuss the

22 implementation of I.S.'s Section 504 plan.  Plaintiff alleges that Rolling Hills staff declined to

23 implement the plan developed by Lakeside, and that the alternative plan developed by Rolling

24 Hills was defective.  Plaintiff alleges that as a result, she continued to receive notice from

25 teachers and staff regarding I.S.'s behavioral problems, missing assignments, and poor academic

26 progress.  Plaintiff claims that Rolling Hills staff primarily blamed her for I.S.'s lack of academic

27 progress.  Under these circumstances, Plaintiff arranged for private tutoring for I.S. at her own

28

1   expense.

2       As the 2007-08 school year continued, I.S. began to experience increasing anxiety and

3   depression.  Plaintiff alleges that because of the lengthy commute to Rolling Hills, I.S. had

4   insufficient time, or simply was too tired, to complete his school assignments, and that he

5   experienced predictable stress upon arriving home.  Plaintiff also alleges that as a result of I.S.'s

6   failure to submit assignments in a timely manner, teachers at Rolling Hills routinely kept him in

7   class during recess and lunch periods to complete the required work, further contributing to his

8   isolation, stress, and depression.

9       On the basis of these developments, Plaintiff advised Lakeside in March 2008 that in her

10  judgment the placement at Rolling Hills did not constitute the "free and appropriate public

11  education" guaranteed by both the IDEA and Section 504.  Plaintiff alleges that Lakeside failed

12  to hold a hearing or to investigate her complaint.

13      In April 2008, Plaintiff had I.S. evaluated by Dr. Nancy Sullivan, a neuropsychiatrist at

14  the Children's Health Council in Palo Alto.  Plaintiff states that by the time of the evaluation, I.S.

15  was experiencing regular violent outbursts.  Dr. Sullivan found that I.S.'s IQ had dropped eleven

16  points from his last assessment, only a year earlier, and that his working memory capacity had

17  decreased by thirty percent.  Dr. Sullivan recommended a Section 504 plan with specific

18  accommodations, which according to Plaintiff Rolling Hills subsequently failed to provide.

19      In May 2008, Rolling Hills convened a Section 504 meeting to discuss I.S.'s preparation

20  for seventh grade.  Plaintiff alleges that Rolling Hills again ignored the Section 504 plan

21  previously prepared by Lakeside, refused to include any accountability provisions designed to

22  measure the effectiveness of the plan and its implementation, and denied her reasonable request

23  that I.S. be provided with a "resource period" during which he could work with an aide in order

24  to free up the extra-curricular time that he was spending with teachers.  Lakeside did not

25  participate in any of the Section 504 meetings held during the 2007-08 school year.

26      On June 4, 2008, Chrisman published a letter in the Lakeside school newsletter–which is

27  distributed to all Lakeside families and posted on the Lakeside website–stating that the school

28

4

1   was "under attack" by Plaintiff, who by that time had filed complaints with Lakeside for denial of

2   the free and appropriate public education guaranteed by federal and California law.  Plaintiff

3   alleges that as a result of the letter, other students called I.S. names at school, parents gave I.S.

4   dirty looks, and some students threw rocks at I.S.  On July 28, 2008, Plaintiff filed a request for a

5   due process hearing pursuant to the IDEA in order to challenge Lakeside's determination that I.S.

6   was ineligible for special education services.

7        On August 15, 2008, I.S. was physically attacked by a Rolling Hills student who warned

8   him not to return to school in the fall.  Plaintiff reported the attack to Rolling Hills' principal,

9   who advised Plaintiff that the school could not become involved because the attack occurred off

10  campus.  Plaintiff filed an incident report with the Campbell Police Department.

11       I.S. did not attend the start of the 2008-09 school year.  An assessment sought by Plaintiff

12  in September 2008 revealed that I.S.'s reading skills remained at a second-grade level and that he

13  may have dyslexia.  Plaintiff alleges that Rolling Hills failed to take any action or to suggest any

14  accommodation when presented with these findings.  In late September 2008, however, Lakeside

15  did convene an IEP meeting pursuant to the IDEA to determine whether I.S. is eligible for

16  "special education" and a broad range of "related services" available under the IDEA.  Plaintiff

17  alleges that Lakeside refused to consider any of the assessment data that she had gathered during

18  the preceding year, and that Lakeside insisted that I.S. was performing adequately.  Lakeside

19  ultimately determined that I.S. did not qualify for services under the IDEA.

20       I.S. was absent for the first two months of his seventh-grade year, starting school only in

21  mid-October 2008.  Prior to I.S.'s return to school, Rolling Hills held a further Section 504

22  meeting and again refused to provide I.S. with a "resource period."  On November 7, 2008, I.S.

23  was attacked by another student, and both students were suspended.  Subsequently, I.S.

24  experienced increasing fear of attending school.  He agreed to return to school only if he no

25  longer had to ride the bus.  Plaintiff hired a private driver at a cost of $500 per month, as she no

26  longer could afford the wages she lost by driving I.S. to school herself.  I.S. returned to school

27  but was attacked by another student only two days later.  I.S. requested a staff escort before and

28

Case No. C 09-1131 JF (HRL)
ORDER DENYING MOTIONS  FOR PRELIMINARY INJUNCTION AND GRANTING MOTIONS TO DISMISS
AND STRIKE WITH LEAVE TO AMEND
(JFLC3)

1   after school to walk him between class and the parking lot pick-up area, an accommodation to

2   which Rolling Hills agreed.

3          A due process hearing was held on November 12, 13, and 14, 2008 before ALJ Suzanne

4   Dugan of the Office of Administrative Hearings ("OAH"), during which Plaintiff challenged

5   Lakeside's decision that I.S. is not eligible for special education under the IDEA.  ALJ Dugan

6   refused to hear testimony or to receive evidence pertaining to events occurring after the filing of

7   the due process request.  On December 23, 2008, the ALJ affirmed Lakeside's determination that

8   I.S. is not eligible for special services under the IDEA, concluding that his behavioral problems

9   do not affect his education.

10         Shortly before ALJ Dugan issued her decision, and shortly after the most recent series of

11   attacks, I.S. was reported as a habitual truant.  Plaintiff alleges state and federal law violations by

12   Lakeside, the SCCOE, and CUSD–as well as the corresponding individual Defendants in their

13   official capacities–arising from I.S.'s designation as a truant.

14         In mid-December 2008, Plaintiff's husband received a call from a student at Rolling

15   Hills, "M," who threatened to kill I.S. if I.S. returned to school.  Plaintiff and her husband

16   reported the threat to Rolling Hills' principal, who filed a police report.  The principal also

17   showed Plaintiff's husband a website created by M's father, on which the father appeared in a

18   photograph posing with an arsenal of weapons.  Plaintiff's husband contacted M's father, who

19   advised Plaintiff's husband that M had access to his weapons and was capable of killing I.S.

20   Plaintiff's husband reported this threat to the police.

21         Plaintiff filed an administrative complaint with Lakeside on December 19, 2008,

22   requesting an alternative educational placement as a result of safety concerns generated by the

23   recent actual and threatened attacks on I.S.  Plaintiff alleges that after she filed the complaint,

24   Lakeside removed the bus stop on her road, of which I.S. was the only user, providing a

25   replacement bus stop more than a mile away.  The original bus stop, which had been located on

26   Plaintiff's road for more than fifty years, apparently was restored after I.S. formally dropped out

27   of seventh grade.

28         In January 2009, Plaintiff was advised by an official at CDE to apply for enrollment at

6

Case No. C 09-1131 JF (HRL)
ORDER DENYING MOTIONS  FOR PRELIMINARY INJUNCTION AND GRANTING MOTIONS TO DISMISS
AND STRIKE WITH LEAVE TO AMEND
(JFLC3)

1   Fisher Middle School, but enrollment again was denied.  Plaintiff alleges that Defendant

2   Whitmore's denial of that request violated state and federal law.  In mid-March 2009, Plaintiff

3   requested a further Section 504 meeting with Chrisman, but Chrisman allegedly refused to

4   convene such a meeting.  In mid-April 2009, I.S. had recovered sufficiently from his depression

5   to begin school again, although not at Rolling Hills.  Plaintiff enrolled I.S. in the California

6   Virtual Academy ("CAVA), an online home-school program.  Shortly after enrolling, I.S. was

7   given a handwriting assessment which revealed that he has severe dysgraphia.  He also scored in

8   the eighteenth percentile nationally on a reading placement test and in the fortieth percentile in

9   math.

10      On June 23, 2009, Plaintiff filed the operative First Amended Complaint alleging the

11  aforementioned violations and seeking reversal of the ALJ's determination that I.S. is ineligible

12  for IDEA services as a child with an emotional disturbance.  The parties then filed the instant

13  motions.  On August 18, 2009, the Court issued an order granting O'Connell's  motion to dismiss

14  with leave to amend and setting or continuing all other pending motions until September 4, 2009.

15  In the meantime, Plaintiff informed the Court and Defendants that she had decided not to enroll

16  I.S. at South Bay Prep, the San Jose charter school she previously had selected for the 2009-2010

17  school year.  Instead, I.S. remains enrolled in CAVA, the online charter home school in which he

18  enrolled last spring.

19                              **II. LEGAL STANDARDS**

20  **A.     Motions for preliminary injunction**

21      A preliminary injunction is "an extraordinary remedy that may only be awarded upon a

22  clear showing that the plaintiff is entitled to such relief."  *Winter v. Natural Res. Def. Council,*

23  *Inc.*, 129 S.Ct. 365, 376 (2008).  A party seeking a preliminary injunction must show either "(1) a

24  combination of probable success on the merits and the possibility of irreparable injury, or (2) that

25  serious questions are raised and the balance of hardships tips sharply in its favor."  *Los Angeles*

26  *Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1201 (9th Cir. 1980).  These

27  "two formulations represent two points on a sliding scale in which the required degree of

28  irreparable harm increases as the possibility of success decreases."  *Oakland Tribune, Inc. v.*

7

1  *Chronicle Publ'g Co.*, 762 F.2d 1374, 1376 (9th Cir. 1985).

2  Requests for mandatory, as opposed to prohibitory, injunctive relief are subject to a

3  heightened standard: "A prohibitory injunction preserves the status quo. A mandatory injunction

4  goes well beyond simply maintaining the status quo pendente lite [and] is particularly disfavored.

5  When a mandatory preliminary injunction is requested, the district court should deny such relief

6  unless the facts and law clearly favor the moving party." *Stanley v. Univ. of S. Cal.*, 13 F.3d

7  1313, 1320 (9th Cir. 1994) (quotation marks and citations

8  omitted).

9

**B.      Motions to dismiss for lack of subject matter jurisdiction**

10  A motion to dismiss is proper under Rule 12(b)(1) where the Court lacks jurisdiction

11  over the subject matter of the complaint. Fed. R. Civ. P. 12(b)(1). The court presumes a lack of

12  subject matter jurisdiction until the plaintiff meets her burden establishing subject matter

13  jurisdiction. Fed. R. Civ. P. 12(b)(1); *see Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S.

14  375, 378 (1994). The non-moving party must support its allegations with competent proof of

15  jurisdictional facts when a party moves for dismissal under Rule 12(b)(1). *See Thomson v.*

16  *Gaskill*, 315 U.S. 442, 446 (1942).

17  **C.      Motions to dismiss for failure to state a claim**

18  On a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6),

19  "[d]ismissal is appropriate only where the complaint lacks a cognizable legal theory or sufficient

20  facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d

21  1097, 1104 (9th Cir. 2008). In ruling on such a motion, a plaintiff's allegations are taken as

22  true, and the Court must construe the complaint in the light most favorable to the plaintiff.

23  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). However, "[w]hile a complaint attacked by a

24  Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation

25  to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions,

26  and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v.*

27  *Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). In addition, "[g]enerally, a district court

28

Case No. C 09-1131 JF (HRL)
ORDER DENYING MOTIONS FOR PRELIMINARY INJUNCTION AND GRANTING MOTIONS TO DISMISS
AND STRIKE WITH LEAVE TO AMEND
(JFLC3)

1   may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal*

2   *Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir.1990).[2]

3   The pleading of a *pro se* litigant is held to a less stringent standard than a pleading drafted

4   by an attorney, and is to be afforded the benefit of any doubt. *Haines v. Kerner*, 404 U.S. 519,

5   520 (1972); *Karim- Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988).

6   However, a *pro se* litigant's pleadings still must be sufficiently pled so that they provide

7   the defendant "with notice of what [it] allegedly did wrong." *Brazil v. U.S. Dep't. of Navy*, 66

8   F.3d 193 (9th Cir. 1995).  A *pro se* litigant must be given leave to amend unless it is absolutely

9   clear that the deficiencies of the complaint could not be cured by amendment. *Lucas v. Dep't of*

10  *Corrs.*, 66 F.3d 245, 248 (9th Cir. 1995).  When amendment would be futile, however, dismissal

11  may be ordered with prejudice. *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

12  **D.    Motions to strike**

13  Pursuant to Federal Rule of Procedure Rule 12(f), the Court may strike "from any

14  pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous

15  matter." Fed. R. Civ. P. 12(f).  This includes striking parts of the prayer for relief when the relief

16  sought is "not recoverable as a matter of law." *Shabaz v. Polo Ralph Lauren Corp.*, 586 F. Supp.

17  2d 1205, 1209 (C.D. Cal. 2008) (citations omitted).

18  As with motions to dismiss, when ruling on a motion to strike, the Court takes the

19  plaintiff's allegations as true and must liberally construe the complaint in the light most favorable

20  to the plaintiff. *See Jenkins*, 395 U.S. at 421; *Argabright v. United States*, 35 F.3d 472, 474 (9th

21  Cir. 1994).  Also as with motions to dismiss, leave to amend must be granted unless it is clear

22  that the complaint's deficiencies cannot be cured by amendment. *See Lucas*, 66 F.3d at 248 (9th

23  Cir. 1995).

24  Motions to strike generally will not be granted unless it is clear that the matter to be

25  stricken could not have any possible bearing on the subject matter of the litigation. *LeDuc v. Ky.*

26  _____

27  [2]Because of this rule, the Court will not consider Plaintiff's claims under Section 1983

28  and the Equal Protection Clause of the Fourteenth Amendment, which are raised for the first time
    in her opposition papers.

9

1  *Cent. Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D. Cal. 1992).  Allegations "supplying background

2  or historical material or other matter of an evidentiary nature will not be stricken unless unduly

3  prejudicial to defendant." *Id.*  Moreover, allegations that contribute to a full understanding of the

4  complaint as a whole need not be stricken.  *Id.*

### III. DISCUSSION

**A.    Plaintiff's motions for preliminary injunction**

7        In light of the recent changes in I.S.'s educational placement, the facts which formed the

8  bases for Plaintiff's motions for preliminary injunction no longer exist. Accordingly, the Court

9  will deny the motions without prejudice.

**B.    Defendants' motions to dismiss for lack of subject matter jurisdiction**

**1. Exhaustion of administrative remedies**

**a. Requirement of exhaustion for IDEA, ADA, and Section 504 claims**

13       Claims brought pursuant to the IDEA ordinarily must be pursued by means of available

14  administrative remedies. "If a plaintiff is required to exhaust administrative remedies but fails to

15  do so, the federal courts do not have jurisdiction to hear the plaintiff's claim." *Blanchard v.*

16  *Morton Sch. Dist.*, 420 F.3d 918, 920-21 (9th Cir. 2005); *see also J.W. ex rel. J.E.W. v. Fresno*

17  *Unified Sch. Dist.*, 570 F. Supp. 2d 1212, 1220 (E.D. Cal. 2008) ("Plaintiff must exhaust his

18  administrative remedies before this Court has subject matter jurisdiction over his claims.")  The

19  exhaustion doctrine embodies the notion that "agencies, not the courts, ought to have primary

20  responsibility for the programs that Congress has charged them to administer." *McCarthy v.*

21  *Madigan*, 503 U.S. 140, 145 (1992).  "Exhaustion of the administrative process allows for the

22  exercise of discretion and educational expertise by state and local agencies, affords full

23  exploration of technical educational issues, furthers development of a complete factual record,

24  and promotes judicial efficiency by giving these agencies the first opportunity to correct

25  shortcomings in their educational programs for disabled children." *Crocker v. Tenn. Secondary*

26  *Sch. Athletic Ass'n*, 873 F.2d 933, 935 (6th Cir. 1989).

27       As Defendants correctly observe, the exhaustion requirement under the IDEA also applies

28  to some claims under Section 504 and the ADA.  Section 1415, subsection (l) of the IDEA states

1   that:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l) (emphasis added). Thus, to the extent that Plaintiff seeks relief under Section 504 and the ADA that is "also available under" the IDEA, the exhaustion requirement applies. If Plaintiff has failed to exhaust her administrative remedies, then the Court lacks jurisdiction over the Section 504 and ADA claims as well.

Under Ninth Circuit caselaw, "the dispositive question generally is whether the plaintiff has alleged injuries that could be redressed to any degree by the IDEA's administrative procedures and remedies. If so, exhaustion of those remedies is required. If not, the claim necessarily falls outside the IDEA's scope, and exhaustion is unnecessary." *Robb v. Bethel Sch. Dist. No. 403*, 308 F.3d 1047, 1050 (9th Cir. 2002); *see also JG v. Douglas County Sch. Dist.*, 552 F.3d 786, 802 (9th Cir. 2008). In *JG*, the Ninth Circuit held that the district court did not have jurisdiction over the plaintiffs' Rehabilitation Act claim where the plaintiffs did not raise the claim in their IDEA administrative hearing. *JG*, 552 F.3d at 803. The court referred to language in the IDEA that "allows claims 'with respect to *any* matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education.'" *Id.* (citing 20 U.S.C. § 1415(b)(6)) (emphasis in original).

Plaintiff may avoid dismissal based on exhaustion if she alleges sufficient facts to support a conclusion that resort to the available procedures would have been futile. *See Hoeft v. Tuscon Unified Sch. Dist.*, 967 F.2d 1298, 1303-04 (9th Cir. 1992); *see also Kerr Ctr. Parents Ass'n v. Charles*, 897 F.2d 1463, 1469 (listing cases).

### b. Exhaustion of IDEA claims against LGUSD, CUSD, and the SCCOE

In its order issued August 18, 2009 ("August 18th Order"), the Court dismissed Plaintiff's IDEA claims against the California Department of Education (CDE) because Plaintiff had failed to exhaust administrative remedies with respect to that agency. As summarized in that order:

11

> Where a state agency is not made a party to an administrative proceeding, it is denied the opportunity to remedy the wrong complained of, and claims with respect to that agency will not be considered to have been exhausted. *Whitehead v. School Bd. for Hillsborough County*, 932 F. Supp. 1393, 1396 (M.D. Fla. 1996) ("A purpose of requiring exhaustion of remedies is to provide state agencies an opportunity to resolve system defects without unnecessary judicial involvement. It is this opportunity that Plaintiffs denied Defendant [Department of Education] by failing to include the Department in the initial dispute.").

August 18th Order, 7:10-16.  Applying the exhaustion doctrine, the Court granted CDE's motion to dismiss because Plaintiff did not seek relief against the CDE through formal administrative procedures, nor has she alleged sufficiently that such efforts would have been futile.

Similarly here, Whitmore, VanderMolen, and Weis move to dismiss on behalf of their respective agencies–LGUSD, CUSD, and the SCCOE[3]–because Plaintiff has failed to exhaust her remedies under the IDEA with respect to those agencies.  Plaintiff did not name any of these three agencies as parties in the OAH hearing presided over by ALJ Dugan or any other due process hearing.

Nor has Plaintiff sufficiently alleged that pursuit of due process procedures with regard to LGUSD, CUSD, or the SCCOE would have been futile.  (FAC ¶¶ 113-118.)  With regard to the SCCOE, Plaintiff alleges simply that she has "written complaint letters to [Defendant] Weis, and to his predecessor Joe Fimiani" and that the SCCOE "failed to comply with state and federal laws." (FAC ¶ 118.)  Nothing in that allegation supports a conclusion that pursuing formal due process procedures against the SCCOE would have been futile.

In her opposition to LGUSD's motion to dismiss, Plaintiff argues that her available administrative remedies were exhausted when she "consulted with an OAH technical adviser and was told that OAH had no jurisdiction because the denial of admission [to Fisher Middle School] was not IDEA-related." (Resp. to Def. Whitmore's Mot. to Dismiss, 10:14-16.)  This allegation is insufficient under *Hoeft*.  As LGUSD contends, if Plaintiff had formally named LGUSD in a

---

[3]While Plaintiff named Lakeside as a defendant, she failed to name any of the other agencies.  Instead, Plaintiff named Chrisman, Whitmore, VanderMolen, and Weis individually as defendants in their official capacities.  Because this was improper, as discussed below, the Court will treat the claims as if they were asserted against the respective agencies.  This parallels the Court's treatment of the issues relating to O'Connell and the CDE in the August 18th Order.

12

1   due process hearing and the OAH held that it did not have jurisdiction, "an OAH order

2   dismissing Plaintiff's due process request or denying her request for placement at Fisher would

3   be an appealable finding and conclusion, such as to confer subject matter jurisdiction on this

4   Court." (Def. Whitmore's Reply in Supp. of Mot. to Dismiss 4:15-17.)

5       Because Plaintiff has failed to exhaust her administrative remedies or plead sufficiently

6   the futility of such exhaustion, Plaintiff's IDEA claims against LGUSD, CEUSD, and the

7   SCCOE will be dismissed, with leave to amend.

8                       **c. Exhaustion of IDEA claims against Lakeside**

9       Lakeside also contends that all claims against it based on events that occurred after the

10  period considered by ALJ Dugan must be dismissed for Plaintiff's failure to exhaust

11  administrative remedies. The period considered by the ALJ ended on July 28, 2008, the date

12  Plaintiff requested a due process hearing. Although Plaintiff contends that the ALJ's decision to

13  limit review was improper, the IDEA provides that "[t]he party requesting the due process

14  hearing shall not be allowed to raise issues at the due process hearing that were not raised in the

15  notice filed under subsection (b)(7) of this section, *unless the other party agrees otherwise.*" 20

16  U.S.C. § 1415(f)(3)(B) (2006) (emphasis added). Plaintiff does not allege that Lakeside agreed

17  to allow Plaintiff to bring claims based on events occurring after the filing date.

18      Plaintiffs under the IDEA "cannot seek to litigate claims in federal court that arose

19  subsequent to the time period at issue in the underlying proceeding." *J.W.*, 570 F. Supp. 2d at

20  1220; *see also Metro. Bd. of Pub. Educ. v. Guest*, 193 F.3d 457, 463 (6th Cir.1999) (court

21  exceeded its jurisdiction to the extent it ruled on issues from subsequent school years not at issue

22  in administrative hearing); *Jeremy H. v. Mount Lebanon Sch. Dist.*, 95 F.3d 272, 283-84 (3d

23  Cir.1996) (claims arising after conclusion of administrative hearing and claims not raised in that

24  hearing must be exhausted, and cannot be raised in due process appeal). Because Plaintiff's

25  IDEA claims against Lakeside based on events occurring after July 28, 2008, were not considered

26  by the ALJ, they have not been exhausted, and this Court lacks jurisdiction to hear them.

27      Nor has Plaintiff adequately pled that seeking administrative review with respect to

28  events occurring after July 28, 2008, would have been futile. Plaintiff alleges merely that

13

1   "[g]iven the summary dismissal of all complaints, the non-compliance with procedural

2   safeguards, and the retaliatory acts by Chrisman, it would be futile to continue filing complaints

3   alleging the same violations and requesting the same relief." (FAC ¶ 116.)  Plaintiff refers to

4   "summary dismissal of all complaints," but she does not allege that, after being informed of the

5   limited scope of the first due process hearing, she ever sought another one or that such an effort

6   would have been futile.

7        The sole IDEA claims over which the Court currently has jurisdiction are those based on

8   events occurring between May 2007 and July 28, 2008, as these are the only claims with respect

9   to which Plaintiff has exhausted her administrative remedies.  Accordingly, all other IDEA

10  claims will be dismissed, with leave to amend.

11              **d. Exhaustion of Plaintiff's Section 504 and ADA claims[4]**

12       Plaintiff's Section 504 and ADA claims are based primarily on Defendants' alleged

13  denial to I.S. of a free appropriate public education ("FAPE") under the IDEA.  (*See, e.g.*, FAC ¶

14  ¶ 133, 140.)  To the extent that the claims based on Section 504 and the ADA relate to this

15  alleged denial and therefore could have been redressed through IDEA procedures, they are

16  subject to the exhaustion doctrine.  Because Plaintiff failed to pursue administrative remedies for

17  any of her FAPE-based claims against LGUSD, CUSD, or SCCOE, or sufficiently allege futility

18  of such exhaustion, the Court presently has no jurisdiction over those claims.  Accordingly,

19  Plaintiff's Section 504 and ADA claims based on the alleged denial of a FAPE will be dismissed,

20  with leave to amend.

21       Similarly, Plaintiff's Section 504 and ADA claims against Lakeside based on the denial

22  of a FAPE resulting from events alleged to have occurred after July 28, 2008, also must be

23  dismissed for failure to exhaust administrative remedies or demonstrate futility.  As to claims

24  arising during the period that was considered by the ALJ, Plaintiff did not assert any ADA or

25  Section 504 claims at the administrative hearing.  Thus, Plaintiff's Section 504 and ADA claims

26  _____

27       [4]As with the IDEA claims, the Court will treat the Section 504 and ADA claims as if they
    had been made against the agencies to the extent that claims against individuals are disallowed
28  for reasons discussed below.

Case No. C 09-1131 JF (HRL)
ORDER DENYING MOTIONS  FOR PRELIMINARY INJUNCTION AND GRANTING MOTIONS TO DISMISS
AND STRIKE WITH LEAVE TO AMEND
(JFLC3)

1    against Lakeside are subject to dismissal, with leave to amend.

2           Section 504 and ADA claims that do not seek relief "also available under" the IDEA

3    "necessarily fall[] outside the IDEA's scope." *Robb*, 308 F.3d at 1050.  For these claims,

4    therefore, "exhaustion is unnecessary." *Id.*  To the extent that any of Plaintiff's 504 claims are

5    not related to the provision of FAPE or "the identification, evaluation, or educational placement"

6    of I.S., such claims are addressed below.

7           **2. Federal question jurisdiction**

8           Whitmore, VanderMolen, and Weis move to dismiss for lack of subject matter

9    jurisdiction all claims based on violations of the California Educational Code.  The only two

10   bases for this Court's exercise of jurisdiction over such state claims are diversity jurisdiction

11   under 28 U.S.C. § 1332 and supplemental jurisdiction under 28 U.S.C. § 1367.  Because she

12   does not allege complete diversity, Plaintiff may proceed on her state claims only if Section 1367

13   is satisfied.  Section 1367 requires that non-federal claims be "so related to claims in the action

14   within such original [federal] jurisdiction that they form part of the same case or controversy."

15   28 U.S.C. § 1367(a) (2008).

16          Here, however, Plaintiff can point to no federal claim that is sufficiently related to her

17   state claims against Whitmore, VanderMolen, and Weis.  Plaintiff alleges that 28 U.S.C. § 1331

18   provides federal subject matter jurisdiction because the action "arises under" Section 504, the

19   ADA, and the IDEA.  (FAC  ¶ 11.)  As discussed above, however, this Court does not have

20   jurisdiction over Plaintiff's claims under these federal statutes against the agencies Whitmore,

21   VanderMolen, and Weis represent.  Moreover, as noted in footnote 3 above and discussed in

22   more detail below, Plaintiff cannot properly bring claims under these statutes against these

23   defendants as individuals.

24          Nor are the state claims against these defendants sufficiently related to Plaintiff's

25   remaining federal claims.  Plaintiff's allegations of state law violations by Whitmore,

26   VanderMolen, and Weis all occurred after the period subject to ALJ Dugan's review under the

27   IDEA, and the alleged violations are unrelated to Plaintiff's claims of retaliation under Section

28   504 and the ADA.

15

1

2

**C.     Motions to dismiss for failure to state a claim**

3       Defendants also move to dismiss on several grounds those claims to which this Court

4  does have subject matter jurisdiction.  These grounds are addressed below and combined to the

5  extent such arguments overlap.

6       **1.  Motion to dismiss for lack of standing and ability to proceed *pro se***

7       Defendants first challenge Plaintiff's standing to bring claims on behalf of her son as a *pro*

8  *se* litigant.  The Court addressed this argument with relation to O'Connell in its August 18th

9  Order, and the reasoning in that order is applicable here:

10      Defendant[s] do not dispute Plaintiff's standing to pursue her claims under IDEA.
        Although such claims readily might be characterized as claims on behalf of her
11      son, the Supreme Court held in *Winkelman v. Parma City School District* that "the
        relationship between a parent and child is sufficient to support a legally
12      cognizable interest in the education of one's child," such that parents may sue
        directly for certain violations of IDEA.  550 U.S. 516, 535 (2007).  Defendant[s]
13      *do*[] challenge Plaintiff's standing under section 504 of the Rehabilitation Act and
        Title II of the ADA, but under Ninth Circuit precedent, Plaintiff may assert claims
14      under those statutes "insofar as she is asserting and enforcing the rights of her son
        and incurring expenses for his benefit."  *Blanchard v. Morton School Dist.*, 509
15      F.3d 934, 938 (9th Cir. 2007) (citing *Winkelman*, 550 U.S. at 529); *but see D.A. v.*
        *Pleasantville School Dist.*, Civil No. 07-4341 (RBK), 2008 WL 2684239, at *6-7
16      (D.N.J. June 30, 2008) (rejecting *Blanchard*'s extension of *Winkelman* to claims
        under § 504 and Title II of the ADA).  Moreover, a parent has standing to assert a
17      Rehabilitation Act claim that defendants retaliated against the parent for
        complaints relating to his or her child's education.  *See Weber v. Cranston School*
18      *Committee*, 212 F.3d 41, 48-49 (1st Cir. 2000); *see also Kampmeier v. Nyquist*,
        553 F.2d 296, 299 (2d Cir. 1977).

19  August 18th Order, 9:7-23.

20      Defendants' motion therefore will be denied to the extent that Plaintiff is "asserting and

21  enforcing the rights of her son and incurring expenses for his benefit."  However, to the extent

22  that Plaintiff is asserting rights on behalf of her son that are unrelated to the denial of education

23  under these federal statutes, Plaintiff may not represent I.S. *pro se*.

24      **2.  Motion to dismiss IDEA, Section 504, and ADA claims against individual**
           **defendants**
25

26      Whitmore, Weis, VanderMolen, and Chrisman all contend that they cannot be sued as

27  individuals under the Section 504, the ADA, or the IDEA. They are correct.  Under Section 504,

28  defendants must be "recipients of public funding."  29 U.S.C. § 794(a) (2008).  Under the ADA,

1    defendants must be "public entities" 42 U.S.C. § 12132 (2008).  Because the moving Defendants

2    are neither "recipients of public funding" nor "public entities," they cannot be sued as

3    individuals.  *See, e.g.*, *Doe ex rel. Doe v. State of Hawaii Dep't of Educ.*, 351 F. Supp. 2d 998,

4    1010-11 (D. Hawai'i 2004) (citing *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002))

5    (agreeing with defendants that "Section 504 of the Rehabilitation Act cannot support a lawsuit

6    against them in their individual capacity").  The IDEA, like the ADA and Section 504, does not

7    provide a private right of action against individual defendants, but rather provides for avenues of

8    relief against state and local educational agencies that receive federal funding.  *See, e.g.*, 20

9    U.S.C. § 1415(a) (2008).

10        As these three federal statutes do not provide a basis for individual liability, the Court

11   will grant the individual Defendants' motions to dismiss these claims without leave to amend.  If

12   Plaintiff still desires to seek relief against the individual defendants, she must amend her

13   complaint to rely upon other statutes, such as 42 U.S.C. § 1983 or state tort laws, that provide

14   private rights of action against individuals.

15   **3. Motion to dismiss for failure to state a discrimination claim under Section 504
       and the ADA**

16        Defendants also move to dismiss Plaintiff's discrimination claims under Section 504 and

17   the ADA on several other grounds.  Because the discrimination claims are subject to the

18   exhaustion doctrine and Plaintiff has failed to exhaust her remedies under these statutes, the

19   Court need not address Defendants' arguments in full.  It will, however, address briefly

20   Defendants' contention that Plaintiff has failed to allege that I.S. was discriminated against

21   because of his disability.

22        To state a prima facie case of discrimination under either Section 504 or the ADA, a

23   plaintiff must demonstrate, among other elements, that he or she was discriminated against by

24   reason of her disability.  *See, e.g., Lovell v. Chander*, 303 F.3d 1039, 1052 (9th Cir. 2002)

25   (describing the prima facie elements for both statutes).  Plaintiff alleges that I.S. is disabled, was

26   qualified to receive certain government benefits, and did not receive them.  Even if all of these

27   allegations are accepted as true, they are insufficient to support a conclusion that I.S. was

28

17

1    *discriminated against* because of his disability.

2              **4.  Motion to dismiss based on Defendants' immunity from suit**

3                    **a. Quasi-judicial immunity**

4         Gutierrez and the Office of Administrative Hearings (OAH) (collectively "OAH

5    Defendants")[5] move to dismiss on the grounds that they are absolutely immune from suit "for

6    claims arising either from the ALJ's conduct of the hearing or her decision."  (Def. Gutierrez's

7    Mot. to Dismiss 4: 13-14.)  Their motion is well-taken.

8         "Anglo-American common law has long recognized judicial immunity, a 'sweeping form

9    of immunity' for acts performed by judges that relate to the 'judicial process.'"  *In re Castillo*,

10   297 F.3d 940, 947 (9th Cir. 2002) (citing *Forrester v. White*, 484 U.S. 219, 225 (1988)).

11   Through the years, courts have extended this immunity to "nonjudicial officers for 'all claims

12   relating to the exercise of judicial functions.'"  *Id.* (citation omitted).  Under the Supreme Court's

13   current formulation, immunity shields nonjudicial actors when they "perform official duties that

14   are functionally comparable to those of judges, i.e., duties that involve the exercise of discretion

15   in resolving disputes." *Id.* at 948 (citing *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435

16   (1993)).

17        Plaintiff's claim against the OAH Defendants is based solely on her contention that ALJ

18   Dugan misinterpreted the law in finding for Lakeside in her ruling dated December 23, 2008.

19   "The OAH is a state agency that contracts with the California Department of Education to

20   provide impartial hearing officers to presided in IDEA due process hearings." Gutierrez MTD,

21   1:24-25.  ALJ Dugan, in serving as such an impartial hearing officer for I.S.'s due process

22   hearing and issuing the contested ruling, performed the type of duties that traditionally have been

23   protected by judicial immunity.  Because Plaintiff's only claims against the OAH defendants are

24   barred by judicial immunity, the motion will be granted without leave to amend.

25   //

26

27   ─────────────────────

28        [5]Plaintiff named only Ms. Gutierrez in her complaint.  As the analysis in this section
     equally applies to the OAH, however, the Court includes OAH in the disposition of this motion.

18

1

**b. Eleventh Amendment immunity**

2   Even if the Court did have subject matter jurisdiction over state law claims against them,

3   Chrisman, Weis, VanderMolen, and Whitmore may not be sued in federal court in their official

4   capacities as agents of the State of California.  As the Court noted with respect to Superintendent

5   O'Connell in its August 18th Order, "[A] state official is immune from suit in federal court for

6   actions taken in an official capacity."  *California v. Deep Sea Research, Inc.*, 523 U.S. 491, 502

7   (1998) (citations omitted).  While defendants remain liable in their personal capacity for acting

8   *ultra vires*, see *Ex Parte Young*, 209 U.S. 123 (1908), Plaintiff explicitly has sued each of the

9   individual defendants in his or her official capacity.[6]  (FAC ¶¶ 17, 21-23.)  Because they are

10  immune from such suits under the Eleventh Amendment, the Court will dismiss any remaining

11  state claims against them without leave to amend.

12  **5. Motion to dismiss for failure to assert a retaliation claim under the ADA**

13  Chrisman and Lakeside move to dismiss Plaintiff's claim under the anti-retaliation

14  provision of the ADA, 42 U.S.C. 12203 (2006).[7]  Defendants argue that (1) Plaintiff has failed to

15  state a claim for retaliation; (2) individuals may not be sued for retaliation; and (3) Chrisman

16  acted in an official, rather than a personal, capacity with respect to his alleged acts.

17  **a. Plaintiff fails to state a claim for retaliation**

18  To establish a claim for retaliation, Plaintiff must show that: "(1) he or she engaged in a

19  protected activity; (2) suffered an adverse . . .action; and (3) there was a causal link between the

20  two."  *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 849 (9th Cir. 2004).

21  Defendants first challenge the sufficiency of the allegations against Chrisman.  Plaintiff

22  alleges that Chrisman "refused to convene the meeting in violation of 34 CFR 104.36," and that

23  he published comments about Plaintiff and I.S. in the school newsletter, without naming them,

24  claiming that Lakeside was "under attack." (FAC ¶¶ 90, 105.)  Plaintiff claims that the latter act

25

26  [6]Plaintiff also asserts a retaliation claim against Chrisman in his personal capacity. This claim is addressed below.

27
28  [7]Weis and VanderMolen join in this motion, but as they have been sued only  in their official capacity, they are immune from liability for this claim.

19

1   led to name calling, dirty looks, and rocks thrown at I.S.  Plaintiff fails to allege in more than

2   conclusory fashion the protected activity in which she was engaged and also fails to tie that

3   protected activity to an adverse action against her by Chrisman.

4       Plaintiff's claim against Lakeside is similarly inadequate.  Plaintiff alleges that Lakeside

5   removed the bus stop near her home after I.S. had difficulties at his new school and then replaced

6   the bus stop after I.S. dropped out of Rolling Hills.  Again, Plaintiff does not allege the

7   connection between any specific protected activity and adverse action allegedly undertaken by

8   Lakeside.

9       **b. Claims against individuals for retaliation under the ADA**

10      Even if Plaintiff had stated a prima facie claim for retaliation, her claim against Chrisman

11  is subject to dismissal, as Chrisman, in his individual capacity, is neither a "public entity" nor a

12  "federal recipient."  In the employment context, courts have held explicitly that the ADA does

13  not allow for suits against individual defendants, even for retaliation claims.  *See, e.g.*, *Baird v.*

14  *Rose*, 192 F.3d 462, 471-72; *Stern v. Cal. State Archives*, 982 F.Supp. 690, 692 (E.D. Cal 1997)

15  ("A careful reading of the relevant provisions in light of the ADA's overall structure makes it

16  clear that plaintiff cannot maintain an ADA retaliation claim against individual defendants who

17  do not otherwise satisfy the definition of an employer.")  By analogy, school officials may not be

18  held liable either.

19      **c. Chrisman acted in his official capacity as Lakeside's Superintendent**

20      Even if Chrisman were subject to suit in his personal capacity for retaliation under the

21  ADA, none of Plaintiff's allegations involves Chrisman acting in his personal capacity.  Because

22  Chrisman thus was acting as a state agent both in writing the school newsletter and in making

23  decisions regarding bus routes, he is entitled to the same Eleventh Amendment immunity

24  discussed above.

25      Pursuant to the foregoing analysis, Plaintiff's retaliation claims against Defendants

26  Lakeside and Chrisman will be dismissed, with leave to amend.  To survive future motions to

27  dismiss on the same grounds, Plaintiff must allege the elements of a prima facie case and

28  establish that Chrisman acted in his personal rather than his official capacity in committing the

20

1    alleged acts of retaliation.

2    **D.      Motions to Strike Portions of Plaintiff's FAC**

3          Defendants move to strike several of Plaintiff's requests for relief.  For the reasons

4    discussed below, these motions will be granted with leave to amend.

5          **1. Punitive damages**

6          Defendants first seek to strike Plaintiff's request for punitive damages.  In light of the

7    disposition of Plaintiff's claims in this order, and pending further amendment of the pleadings,

8    Lakeside, a public agency, is the only remaining Defendant.  Under California law "a plaintiff

9    who alleges injury caused by a public entity may be entitled to actual damages for that injury, but

10   not punitive damages."  *Doe v. County of San Mateo*, 2008 WL 5245889 *7 (N.D. Cal. Dec. 17,

11   2008).

12         **2. Monetary damages under the IDEA**

13         Defendant next moves to strike references to monetary damages under the IDEA.  As

14   another district court in this circuit has held:

15         Damages, however, are clearly unavailable under the IDEA. *See Mountain*
           *View-Los Altos Union High Sch. Dist. v. Sharron B.H.*, 709 F.2d 28, 30 (9th
16         Cir.1983) (finding "the damage remedy outside the scope of the [EAHCA, the
           predecessor statute to the IDEA]" and thus unavailable for violation of the stay
17         put provision, and agreeing with the Seventh Circuit that "the wording of the
           statute does not disclose a congressional intent to provide a damage remedy");
18         Witte v. Clark County Sch. Dist., 197 F.3d 1271, 1275 (9th Cir.1999) (noting that
           "ordinarily monetary damages are not available under [the IDEA]" and holding
19         that "monetary damages ... is not relief under the IDEA"); *Kutasi v. Las Virgenes*
           *Unified Sch. Dist.*, 494 F.3d 1162, 1168 (9th Cir.2007) (same).

20   *Alexis R. v. High Tech Middle Media Arts Sch.*, 2009 WL 2382429 (S.D. Cal. August 3, 2009).

21   Defendants acknowledge that damages are sometimes awarded to reimburse parents for

22   educational expenses incurred in the past.  *See, e.g., Burlington v. Dep't of Educ.*, 471 U.S. 359,

23   369 (1985).  The FAC, however, makes no such demand.

24         **3. Attorneys' fees for *pro se* plaintiff**

25         Plaintiffs who proceed *pro se* are not entitled to attorney's fees.  *Blanchard v. Morton*

26   *Sch. Dist.*, 509 F.3d 934, 938 (9th Cir. 2007).

27   //

28

Case No. C 09-1131 JF (HRL)
ORDER DENYING MOTIONS  FOR PRELIMINARY INJUNCTION AND GRANTING MOTIONS TO DISMISS
AND STRIKE WITH LEAVE TO AMEND
(JFLC3)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motions for preliminary injunction are denied, and Defendants' motions to dismiss and to strike are granted with leave to amend in a manner consistent with this order.

Any amended complaint shall be filed within thirty (30) days of the date of this order.

**IT IS SO ORDERED.**

DATED: 9/29/09

_____
JEREMY FOGEL
United States District Judge

Case No. C 09-1131 JF (HRL)
ORDER DENYING MOTIONS  FOR PRELIMINARY INJUNCTION AND GRANTING MOTIONS TO DISMISS
AND STRIKE WITH LEAVE TO AMEND
(JFLC3)

1    This Order has been served upon the following persons:

2    Douglas Neil Freifeld dfreifeld@fagenfriedman.com

3    Elise Stassart elise_moss@yahoo.com

4    Gregory J. Rousseve groussev@cde.ca.gov, MReed@cde.ca.gov

5    Katherine A. Alberts albertsk@stubbsleone.com, suttonk@stubbsleone.com

6    Tamar Pachter Tamar.Pachter@doj.ca.gov

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 09-1131 JF (HRL)
ORDER DENYING MOTIONS  FOR PRELIMINARY INJUNCTION AND GRANTING MOTIONS TO DISMISS
AND STRIKE WITH LEAVE TO AMEND
(JFLC3)